**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CATARIE CREON WRIGHT,** | ) | |
| **ID # 1507834,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:11-CV-1084-K (BH)** |
| | ) | |
| **RICK THALER, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

## I.  BACKGROUND

On June 16, 2011, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for aggravated robbery and kidnapping in Cause Nos. 2-07-405 and 2-7-406 in Rockwall County, Texas.  Respondent is Rick Thaler, Director of TDCJ-CID.

**A.**     **Factual and Procedural History**

On June 13, 2007, the State indicted petitioner for aggravated robbery, aggravated kidnapping, and unlawful possession of a firearm by a felon, each enhanced by a prior conviction for burglary of a habitation, on or about April 27, 2007.  (Clerk's Record ("C.R."):4).[1]  He pleaded not guilty and was tried before a jury on May 19-21, 2008.  (C.R.:3).  The state appellate court recounted the evidence presented at trial as follows:

---

[1] There are three separate clerk's records for the three cases against petitioner.  However, the relevant page numbers are the same in each.

On April 27, 2007, Wright and Lashawn Blakely went to Rockwall Dodge where Benjamin Wright worked as a sales associate. Wright introduced himself to Benjamin Wright as "Marcus." Wright and Blakely expressed an interest in a 2003 heavy duty truck and asked Benjamin Wright to start the engine so they could hear what it sounded like. When Benjamin Wright started the engine, Wright and Blakely got into the truck, sat in the backseat, and asked Benjamin Wright to drive the truck so they could feel how it rode. Benjamin Wright drove the truck onto the service road and, after approximately fifteen seconds, heard Wright say "I've got my fucking piece. We're taking this truck." At first, Benjamin Wright did not understand what he meant. However, when he turned around, he saw that Wright had a gun pointed at his head.

Benjamin Wright offered to pull the truck over to the side of the road and said they could have the truck. Instead, Wright told Benjamin Wright to take the next entrance onto highway I-30. While he was driving, Blakely repeatedly asked Benjamin Wright if the truck had a GPS tracking system. Again, Benjamin Wright asked f he could pull over and get out of the truck, but Wright told him to keep driving. Also, Wright asked Benjamin Wright for his cellular telephone. However, when Benjamin Wright said he would need it to get back to the dealership, Wright just took the battery.

After approximately fifteen minutes, Wright told Benjamin Wright to exit the highway and stop at a field located next to the service road. After Benjamin Wright left the truck, he asked for his battery back and Wright gave it to him. Blakely told Benjamin Wright he had to wait ten minutes before calling the police and Benjamin Wright agreed. However, as soon as they drove away, Benjamin Wright called 9-1-1.

After hearing a radio dispatch describing the truck and its occupants, Officer B. St. Clair observed the truck. He followed the truck waiting for additional officers to catch up to them. Once on a residential street, the truck stopped abruptly. Wright got ut of the truck and began running between the houses. Officer St. Clair chased after Wright on foot and observed that Wright had a gun in his hand. While chasing Wright, Officer St. Clair heard a garbage lid close. As he continued to chase Wright, he observed that Wright no longer had a gun in his hand. After Officer St. Clair apprehended Wright, he went back to the garbage can and found a Sig Sauer B-239 semiautomatic gun inside.

2

> Detective Kevin Tilley interviewed Wright.  After reading
> Wright the *Miranda* warnings, he asked Wright if he understood his
> rights and Wright responded "Yes."  Then, he asked Wright if he was
> willing to discuss the events of the day and again Wright answered
> "Yes."  Wright confessed to his involvement, and Detective Tilley
> asked him to provide a written statement.  The *Miranda* warnings are
> printed at the top of the form and Detective Tilley asked Wright to
> read them.  Wright complied and again stated he understood the
> *Miranda* warnings.  Then, Wright handwrote his statement on the
> form and signed it.

*Wright v. State*, 2009 WL 18871127, Nos. 05-08-0778-CR, 05-08-0779-CR, 05-08-0780-CR, slip

op. at *1-2 ( Tex. App.–Dallas, July 2, 2009, pet. ref'd).  The jury found petitioner guilty of all three

charges, and after he pled true to an enhancement paragraph, sentenced him to sixty years for the

aggravated robbery and aggravated kidnapping, and twenty years for the unlawful possession of a

firearm by a felon.  *Id*. at 2.

On direct appeal, petitioner alleged that the trial court had erred in denying his motions to

suppress with respect to the aggravating robbery and aggravating kidnapping convictions, and that

the evidence was insufficient to support his conviction for unlawful possession of a firearm by a

felon.  Petitioner's convictions for aggravated robbery and aggravated kidnapping were affirmed on

direct appeal, but his conviction for unlawful possession of a firearm was reversed, and a judgment

of acquittal was entered.  His petitions for discretionary review were refused on December 16, 2009.

*See* PD-1092-08, PD-1093-09.  He did not file any petition for writ of certiorari with the Supreme

Court.

Petitioner filed state habeas applications challenging his two convictions on March 11, 2011,

raising the same claims he raises in his federal petition. (State Habeas Transcript "S.H.Tr." at 2-30).

The trial court forwarded petitioner's applications to the Texas Court of Criminal Appeals without

issuing any findings of fact or recommendations.  On June 8, 2011, the Court of Criminal Appeals

3

denied his state applications on their merits without a written order.  *See Ex parte Wright*, WR-75,746-01, WR-75,746-02 (Tex. Crim. App. June 8, 2011).

B.     **Substantive Claims**

On June 16, 2011, petitioner filed his petition for federal habeas relief ("Pet.").[2]  He raises

the following grounds for relief:

> (1) the prosecution committed misconduct by charging and prosecuting him for the offense of possession of a firearm by a felon knowing that this charge was barred by statute and therefore could not be proven, which resulted in prejudicial evidence of petitioner's prior felony being placed into evidence at the guilt phase of the trial (ground one);
>
> (2)  his trial attorney rendered ineffective assistance of counsel by
>
>> --not attempting to file a motion to quash the indictment charging petitioner with being a felony in possession of a firearm, move for a directed verdict on that charge, argue that the charge of felon in a possession of a firearm was statutorily barred, or file a motion for new trial with respect to this conviction;
>>
>> –failing to object to the punishment jury instructions which included language enhancing petitioner's convictions with the same felony conviction; and
>
> (3) his appellate attorney rendered ineffective assistance of counsel by failing to raise these claims of prosecutorial misconduct and ineffective assistance of trial counsel on direct appeal.

(Pet. at 7; Brief at 12-18).  On July 29, 2011, petitioner filed a brief in support of his petition.

Respondent filed a response on November 17, 2011, and provided the state court records.  Petitioner

filed a reply brief on December 5, 2011.

---

[2]  Petitioner initially filed a protective petition with the Court on May 24, 2011, when his state habeas applications were still pending and filed a motion seeking to both stop the limitations clock and stay and abate his case. (doc. 5).  This motion was denied (doc. 13), but petitioner subsequently moved to have his previously-filed petition accepted and filed after relief was denied at the state level. (doc. 6).  This motion was granted, and petitioner's federal petition was deemed filed on June 16, 2011, when the motion was received. (doc. 8).  Petitioner's federal petition is timely, as it was filed on the last day of the one-year statute of limitations.

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-sonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-ation of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-ural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established fed-eral law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. PROSECUTORIAL MISCONDUCT

In his first ground for relief, petitioner asserts that the prosecution committed misconduct by charging and prosecuting him for possession of a firearm by a felon despite knowing that this charge could not be proven. He claims that because of this alleged misconduct, evidence that he was previously convicted of a felony was placed before the jury during the guilt phase of the trial and was referenced during closing arguments at the guilt phase, resulting in prejudice to him.

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions by a prosecutor may violate due process in two ways: "They

may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

In this case, petitioner has failed to show that the prosecution acted in an improper manner, or that his trial was rendered fundamentally unfair by any improper actions. Petitioner points to the fact that his conviction for being a felon in possession of a firearm was reversed on direct appeal because the evidence was insufficient to support the conviction. In ruling the evidence insufficient, the state appellate court explained that the prosecution must show that the defendant was previously

convicted of a felony, and that he possessed a firearm after this previous conviction and before the fifth anniversary of his release from confinement or from probation or parole, to establish this offense under Texas state law. *Wright*, slip op. at *6; *see also* TEX. PENAL CODE. ANN. § 46.04(a)(1) (West 2008). The court noted that the prosecution put forth evidence, stipulated to by petitioner, that he has been *convicted* of a prior felony (unauthorized use of a motor vehicle) on April 25, 2002, and that he had received a 300-day sentence, but it had presented no evidence of when he had been released from confinement or parole. Because petitioner possessed a firearm on April 27, 2007, during the commission of the offense, which was two days more than five years after his previous conviction, and there was no evidence in the record regarding his release date from confinement or parole, the state appellate court held that the evidence was insufficient to support the conviction. *Wright*, slip. op. at *8-9.

Contrary to petitioner's contention, the prosecution did not commit misconduct and violate his due process rights by charging him with being a felon in possession of a firearm. The indictment was not statutorily barred, as petitioner claims; the prosecution failed to present evidence of petitioner's release date from his 300-day sentence. The state appellate court's opinion makes clear that had the prosecution presented evidence of petitioner's release date, which would have been within five years of the new offense, the evidence would have been deemed sufficient to support the verdict. While "[a] criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense," *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992), the error of the conviction was corrected by the reversal of his conviction. Petitioner has no shown any further violation of his constitutional rights in the prosecution's failure to present sufficient evidence.

8

Even if there was misconduct, petitioner has not shown that it infected the trial with unfairness so as to make the other convictions a denial of due process. There were only two references to petitioner's prior felony during the guilt phase of the trial, and only one paragraph of the prosecutor's closing statement was concerned with the prior felony. (R. 3:53-4, 72-3, 78). The jury was also instructed that evidence of petitioner having committed any other offense could not be considered in determining guilt or innocence. (C.R.:65). Petitioner has failed to establish a due process violation. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation). The state court's denial of this claim is not contrary to federal law, and this ground is therefore without merit..

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his second ground for relief, petitioner asserts that his trial counsel provided ineffective assistance by failing to file a motion to quash the indictment for possession of a firearm by a felon, argue that the charge was barred by statute, or, in the alternative, move for a directed verdict on that charge or file a motion for new trial as to that conviction. Petitioner also claims that counsel was ineffective for failing to object to the punishment jury instructions that enhanced his convictions based on the prior felony conviction used to find him guilty of being a felon in possession.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and

9

that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors.  *Strickland*, 466 U.S. at 695-96.

Petitioner has failed to prove either deficient performance or prejudice.  He first claims that if counsel had filed a motion to quash the indictment, the jury would not have heard evidence of his prior felony during the guilt phase of his trial.  As noted earlier, however, the charge of possession of firearm by a felon was a valid charge under Texas state law.  Petitioner had been released from confinement for a prior felony within five years of possessing a firearm on April 27, 2007.  The prosecution failed to present sufficient evidence to support the offense as charged in the indictment. Therefore, a motion to quash would not have been granted, and counsel was not ineffective for

failing to file one.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).  Petitioner next asserts that counsel was ineffective for failing to move for a directed verdict or file a motion for new trial on the basis that the felon in possession charge was an invalid one or argue to the court and jury that the charge was barred by statute.  Counsel was not deficient because the charge was a valid one, and petitioner has shown no prejudice because this conviction was reversed on appeal, the same result that would have occurred had a motion for directed verdict or motion for new trial been granted.  Furthermore, had counsel made this argument to the judge and/or jury, the prosecution may have corrected its mistake and presented sufficient evidence to support the charge.  Counsel was not ineffective in this regard.

Finally, petitioner asserts that trial counsel was ineffective for failing to object to the punishment jury charges because they enhanced his convictions with a prior felony that was "statutorily barred."  Although petitioner presents no support for his assertion that his prior conviction for unauthorized use of a motor vehicle could not be used to enhance his current convictions, it in fact was not the conviction used to enhance punishment.  Instead, petitioner pled true to enhancement paragraphs in the indictments for aggravated assault and aggravated kidnapping that alleged that he had been convicted of burglary of a habitation on March 28, 2003., which was a completely different conviction than the one alleged in the charge of felon in possession of a firearm. (R. 3:80-2).  Counsel was not ineffective for not making a meritless objection to the punishment jury charges.  The state decision denying these claims on their merits is not contrary to federal law, and petitioner's ineffective assistance of counsel claims are without merit and should be denied.

11

## V.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Finally, petitioner asserts that appellate counsel was ineffective for failing to raise these claims of prosecutorial misconduct and ineffective assistance of trial counsel.

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*.  Under *Strickland*, petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).  Courts must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal."  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  Petitioner's claims of prosecutorial misconduct and ineffective assistance of trial counsel are without merit.  Therefore, appellate counsel was not ineffective for failing to raise them on appeal.  This ground should also be denied.

## VI.  EVIDENTIARY HEARING

Based on the filings in this case and the proceedings reflected in the state court records, an evidentiary hearing appears unnecessary.

## VII.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 20th day of June, 2012.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

12

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13